IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:16-CV-10-FL

| | |
|---|---|
| HEATHER L. MCBRYDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND RECOMMENDATION** |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Heather L. McBryde ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 23, 31. Both filed memoranda in support of their respective motions.[2] D.E. 24, 32. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 28 Dec. 2016 Text Ord. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

---

[1] Nancy A. Berryhill has succeeded the former defendant, Carolyn W. Colvin, as the Acting Commissioner of Social Security and has been substituted for her as the defendant in this case pursuant to Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

[2] Plaintiff filed with her brief information about one of her physicians, John C. Parker, M.D., purportedly copied from the website of the North Carolina Medical Board (D.E. 24-1). Plaintiff did not attempt to justify admission of this evidence into the record under section six of 42 U.S.C. § 405(g), and the court has not considered it.

# BACKGROUND

## I. CASE HISTORY

Plaintiff filed an application for DIB on 15 June 2012 alleging a disability onset date of 1 December 2010. Transcript of Proceedings ("Tr.") 21. The application was denied initially and upon reconsideration. Tr. 21. Plaintiff filed an application for Supplemental Security Income ("SSI") on 8 February 2013 also alleging a disability onset date of 1 December 2010.[3] Tr. 223. This claim was escalated to the hearing level and consolidated with plaintiff's DIB claim. Tr. 4. A request for a hearing was timely filed on 19 February 2013. Tr. 44-45. On 11 June 2014, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, who was represented by counsel, and a vocational expert testified. Tr. 46-66. The ALJ issued a decision denying plaintiff's claim on 10 September 2014. Tr. 21-28. Plaintiff timely requested review by the Appeals Council. Tr. 42-43. On 9 September 2015, the Appeals Council granted the request for review. Tr. 4.

On 25 November 2015, the Appeals Council adopted the ALJ's decision denying plaintiff's claim for a period of disability and DIB. Tr. 5. Additionally, the Appeals Council determined that plaintiff's SSI claim was not properly before the ALJ:

> The record reflects that the claimant filed a Title 16 application for [SSI] on February 8, 2013, almost a year after filing the present Title 2 application. The Title 16 application was not developed. Instead, it was escalated to the hearing level for consolidation with the Title 2 claim. However, pursuant to 20 CFR 404.952, consolidation is only appropriate if one or more of the issues to be considered at the hearing are the same issues involved in another claim (i.e. the claims involve a common issue). A common issue is present when two or more claims share any overlapping period of time and have the same medical or substantial gainful activity issue. In this case, there is no common issue between the claims because the application for [SSI] was filed February 8, 2013, after

---

[3] The statutes and regulations applicable to DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

December 31, 2010 the claimant's date last insured for purposes of Title 2. Thus the claims do not share any [illegible].

Accordingly, the Title 16 application for [SSI] filed on February 8, 2013 should not have been escalated to the hearing level. The Appeals Council will communicate with the Field Office to advise that development of the Title 16 application for [SSI] at the initial level is necessary.

Tr. 4-5. The Appeals Council found specifically that the ALJ should not have referred to the SSI Regulations in his decision. Tr. 4-5.

At that time, the decision of the ALJ regarding DIB became the final decision of the Commissioner. 20 C.F.R. § 404.981. On 20 January 2016, plaintiff commenced this proceeding for judicial review, pursuant to 42 U.S.C. § 405(g). *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5).

## II. STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.
>
> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[4] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[5]
>
> The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.
>
> At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[6] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the

---

[4] *See also* 20 C.F.R. § 404.1545(a)(1).

[5] *See also* 20 C.F.R. § 404.1545(a)(2).

[6] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### III. ALJ'S FINDINGS

Plaintiff was 26 years old on the alleged onset date of disability and 29 years old on the date of the hearing. *See* Tr. 27 ¶ 7. The ALJ found that plaintiff has at least a high school education (Tr. 27 ¶ 8) and past relevant work as a book sorter, caretaker, bartender, animal caretaker, sales attendant, and cashier (Tr. 27 ¶ 6).

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability through the last date insured, 31 December 2010. Tr. 21; 23 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: major depressive disorder, insulin-dependent diabetes mellitus, and joint arthralgia. Tr. 23 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 23-25 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work as follows:

> [P]rior to her date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b)[7] . . . . Specifically, the claimant was able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day except that the claimant could only occasionally stoop, climb, crouch, crawl, balance, and kneel. The claimant had to

---

[7] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

avoid concentrated exposure to pulmonary irritants and hazards. She was also
limited to simple, repetitive, routine tasks ["SRRTs"].

Tr. 25 ¶ 5.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform her past relevant work. Tr. 27 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of routing clerk, dealer account investigator, and ticket stamper. Tr. 27-28 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 1 December 2010, through her date last insured, 31 December 2010. Tr. 28 ¶ 11.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir.

1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff seeks remand of this case for a new hearing on the grounds that the ALJ erred in handling plaintiff's limitations in concentration, persistence, or pace and the opinions of his treating endocrinologist, John C. Parker, M.D., of Hanover Medical Specialists. The court agrees.

### I. ALJ'S HANDLING OF PLAINTIFF'S LIMITATIONS IN CONCENTRATION, PERSISTENCE, OR PACE

#### A. Applicable Legal Standards

In determining a claimant's RFC, Social Security Ruling 96-8p, 1996 WL 374184 (2 July 1996) requires the ALJ to perform a function-by-function analysis. The ruling states that the "RFC assessment must . . . assess [the individual's] work-related abilities on a function-by-function basis." *Id.* at *1 ¶ 4. However, in *Mascio*, 780 F.3d at 636, the Fourth Circuit declined to adopt a per se rule requiring remand when the ALJ does not perform an explicit function-by-

function analysis. But "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Reference by an ALJ to a proper function-by-function analysis by a state agency consultant may, but does not necessarily, satisfy the function-by-function analysis requirement. *See Herren v. Colvin*, No. 1:15-cv-2-MOC, 2015 WL 5725903, at *5-7 (W.D.N.C. 30 Sept. 2015).

Concentration, persistence, or pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." Listing 12.00C3. It is one of four broad functional areas assessed using the special technique for mental impairments under the Regulations. *See* 20 C.F.R. § 404.1520a. *Mascio* instructs that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question [to the vocational expert] to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The court reasoned:

> [T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

*Id.* The court recognized that a claimant's limitations in concentration, persistence, or pace may not translate into a limitation in the RFC, but held that the ALJ must explain if that is the case. *Id.* In the absence of such an explanation, remand is in order. *Id.*; *see also, e.g., Herren*, 2015 WL 5725903, at *5-7.

8
Case 7:16-cv-00010-FL   Document 33   Filed 02/21/17   Page 8 of 18

## B. Analysis

Here, the ALJ found in applying the special technique for mental impairments as part of his step three analysis that plaintiff had moderate difficulties in concentration, persistence, or pace, stating:

> With regard to concentration, persistence, or pace, the claimant has moderate difficulties. The claimant stated that her mood affects her concentration, but the medical evidence of record reflects that the claimant has not sought or received any mental health treatment prior to her date last insured or since her protective filing date.

Tr. 24 ¶ 4.[8]

As indicated, the only limitation in the RFC that on its face relates to mental capacity is restriction of plaintiff to SRRTs. Under *Mascio*, of course, such a limitation is insufficient to account for plaintiff's difficulties in concentration, persistence, or pace absent a satisfactory explanation.[9] *See Mascio*, 780 F.3d at 638. The ALJ nowhere provides such an explanation.

The Commissioner argues that various portions of the ALJ's discussion of plaintiff's work history, medical evidence, and testimony taken together do adequately explain the absence in the RFC determination of a limitation dealing directly with plaintiff's difficulties with concentration, persistence, or pace. *See* Tr. 25-26. But the ALJ's discussion does not directly address plaintiff's ability to stay on task. Moreover, the ALJ does not characterize his discussion as an explanation of why no limitation directly addressing plaintiff's moderate difficulties in concentration, persistence, or pace was included in his RFC determination.

---

[8] The ALJ's explanation leaves it unclear whether plaintiff's difficulties were not bad enough to be treated and were therefore only moderate, or whether they were bad enough to be treated but plaintiff failed to have them treated and they were therefore moderate. On remand, such ambiguity should be avoided. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (requiring that an ALJ build "'an accurate and logical bridge from the evidence to [the] conclusion[s]'" reached) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

[9] The Fourth Circuit issued *Mascio* on 18 March 2015, after the ALJ issued his decision but prior to the Appeals Council's decision on 25 November 2015. Thus, *Mascio* was issued prior to the date on which the administrative decision became final. *See* 20 C.F.R. § 404.981.

The Commissioner also asserts that case law supports the notion that if additional limitations are included in the RFC along with SRRTs, the RFC does not run afoul of *Mascio*. This is only partially correct. Courts have held that an RFC does not violate *Mascio* if one or more additional *mental* limitations are included in the RFC that address a plaintiff's ability to maintain concentration, persistence, or pace. *See Ford v. Colvin*, No. 4:14-CV-79-D, 2015 WL 5008962, *3 (E.D.N.C. 19 Aug. 2015) (concluding that limitation "to a low production occupation[] requiring no complex decision making, constant change, or dealing with crisis situation" sufficiently accounted for the plaintiff's moderate limitations in concentration, persistence, or pace (alteration in original) (internal quotation marks omitted)); *Linares v. Colvin*, No. 5:14-CV-120, 2015 WL 4389533, at *4 (W.D.N.C. 17 July 2015) (ALJ "accounted for [claimant's] moderate limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact" while also including a limitation to SRRTs). The Commissioner suggests that because the ALJ included other limitations in the RFC along with SRRTs—namely, restriction to occasional postural activities and no concentrated exposure to pulmonary irritants and hazards—there was no error. However, the other limitations are not mental in nature and do not on their face relate to plaintiff's difficulties in concentration, persistence, or pace. The ALJ does not state that the other limitations are intended to address plaintiff's difficulties in concentration, persistence, or pace or otherwise indicate how they purportedly do. Notably, in none of the cases cited by the Commissioner in which the inclusion of additional limitations in the RFC determination beyond the limitation to SRRTs was found adequate under *Mascio* were the conditions of the non-mental type here.

Because the ALJ's RFC determination does not comport with *Mascio*, the case should be remanded for a new hearing.

## II.   ALJ'S HANDLING OF DR. PARKER'S OPINIONS

### A.   Applicable Legal Principles

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* § 404.1527(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. § 404.1527(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted*, 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than to the opinions of a nonexamining source. *See* 20 C.F.R. § 404.1527(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See, e.g., Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a nontreating examining physician than to those of a treating physician); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996) ("In appropriate circumstances, opinions from State agency medical

12
Case 7:16-cv-00010-FL   Document 33   Filed 02/21/17   Page 12 of 18

and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

### B.     Analysis

Dr. Parker of New Hanover Specialists has been plaintiff's treating endocrinologist since at least 7 March 2008 (Tr. 981 (showing Dr. Parker ordered and reviewed labs)) through 10 April 2014 (Tr. 1405 (referencing Dr. Parker as a referring physician)). The record contains notes on at least 12 visits by plaintiff with New Hanover Specialists extending from 5 June 2008 to 26 October 2011. Tr. 496-97, 499-500, 504-05, 507-08, 510-11, 908-09, 911-17, 978-79, 1002-03. While Dr. Parker did not see plaintiff at each of these visits, the record indicates that he reviewed and signed the office visit notes. *See* Tr. 497, 500, 505, 508, 511, 604, 909, 915, 917, 979, 1003. The ALJ did not discuss plaintiff's treatment history with Dr. Parker.

On 19 August 2014, Dr. Parker completed a two-page[10] medical source statement entitled "Medical statement regarding physical abilities and limitations for Social Security disability

---

[10] The second page is simply the signature page.

claim – Prior to December 31, 2010."[11] Tr. 1687-88 (underlining in original). In the first section, entitled "Diagnoses," Dr. Parker lists type 1 diabetes mellitus. Tr. 1687. There follow ten questions to be answered by circling the desired response. Tr. 1687. The questions inquire about the amount of time plaintiff could work per day, and stand and sit at a time; the amount of weight plaintiff could lift; the extent to which plaintiff could bend and manipulate with her hands (*i.e.*, "Never," "Occasionally," "Frequently," or "Constantly"); the extent to which plaintiff would need to elevate her legs in an eight-hour workday (*i.e.*, "Never," "Occasionally," "Frequently," or "Constantly"); and the level of pain with which plaintiff suffers (*i.e.*, "None," "Mild," "Moderate," "Severe," or "Extreme"). Tr. 1687. A space for comments is set out at the bottom of the questionnaire. Tr. 1687.

Dr. Parker opined that plaintiff could work no hours per day; could stand for 15 minutes at a time and sit for 15 minutes at a time; could lift 5 pounds both occasionally and frequently; could bend occasionally; could perform manipulation with her left and right hands occasionally; would need to elevate her legs frequently during an 8-hour workday; and suffered from moderate pain. Tr. 1687. In the section for comments, Dr. Parker wrote, "from Neuropathy or Diabetes Mellitus," ostensibly referring to the source of the moderate pain he found her to have. Tr. 1687.

In his discussion of plaintiff's RFC, the ALJ stated, "Pursuant to the claimant's alleged onset date and date last insured, I have considered medical evidence of record only from December 1, 2010 through December 31, 2010." Tr. 26 ¶ 5. The ALJ shortly thereafter addresses medical opinion evidence:

> Pursuant to 20 CFR §404.1527 . . . and Social Security Rulings 96-6p and 96-2p, I have considered the medical opinions of the claimant's treating physicians, evaluating physicians, and the state agency consultants. I note that none of the

---

[11] Although Dr. Parker issued his medical source statement after the hearing, it was submitted to the ALJ and he made it (Ex. 39F) part of the record before him. *See* Tr. 34.

> claimant's treating physicians has offered any medical opinion with regard to her functional limitations.

Tr. 26 ¶ 5.

The ALJ nowhere expressly addresses Dr. Parker's opinions. The ALJ's findings suggest that he did not even consider it. Contrary to his finding, Dr. Parker did offer opinions on plaintiff's functional limitations.

Dr. Parker's opinions are temporally relevant and should have been considered by the ALJ. Although the medical source statement was completed by Dr. Parker on 14 August 2014, almost four years after plaintiff's date last insured, it expressly relates back to the time period before plaintiff's date last insured. *See* Tr. 1687. An ALJ must consider evidence created after a plaintiff's date last insured if it relates to the time period prior to the plaintiff's date last insured. *Bird v. Comm'r of Soc. Sec. Admin*, 699 F.3d 337, 342 (4th Cir. 2012) (holding that "[t]he ALJ's failure to give retrospective consideration to . . . medical evidence created after [plaintiff's] DLI was an error of law); *Moore v. Finch*, 418 F.2d 1224, 1225 (4th Cir. 1969) (holding that the ALJ erred in refusing to give retrospective consideration of evidence). Moreover, Dr. Parker would have been aware of plaintiff's limitations and abilities prior to 31 December 2010 because he was her treating endocrinologist since at least 2008 to 2014.

The opinions of treating physicians can, of course, be given significant evidentiary weight and thereby play a central role in determination of a disability claim. There is significant medical and other evidence in this case substantiating limitations plaintiff alleges. Proper assessment of Dr. Parker's opinions could materially affect the outcome of this case, especially in light of the length of his treating relationship with plaintiff. Therefore, aside from the considerations noted below, the ALJ's errors are not harmless and require remand. *See, e.g., Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556

U.S. 396, 409 (2009)); *Pulliam v. Colvin*, No. 1:13-cv-176, 2016 WL 843307, at *4 (M.D.N.C. 1 Mar. 2016) (holding that error in ALJ's failure to expressly weigh treating physician's medical opinion was not harmless and warranted remand).

Further, given the deficiencies in the ALJ's handling of Dr. Parker's opinions, the ALJ has failed to build "'an accurate and logical bridge from the evidence to [the] conclusion[s]'" he reached regarding opinions of treating physicians, as required. *Monroe*, 826 F.3d at 189. The court is thereby precluded from conducting a meaningful substantial-evidence review of the ALJ's decision, a ground independently requiring remand. *Id.* at 190-91 (holding that the ALJ's explanation that he gave "limited weight" to medical opinions because "the objective evidence or the claimant's treatment history did not support" them and similarly cursory explanations of other opinions precluded meaningful substantial-evidence review (internal quotation marks omitted)) (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *Fox v. Colvin*, 632 F. App'x 750, 756 (4th Cir. 2015) (holding that explanation by ALJ that he gave "less weight" to medical opinions because they were "not well-supported by the medical record" was so "cursory and conclusory" as to preclude meaningful review and remanding case (internal quotation marks omitted)); *see also Boyd v. Colvin*, No. 9:13-CV-03189-DCN, 2015 WL 875422, at *3 (D.S.C. 2 Mar. 2015) (remanding case and noting that "because of the importance of treating physicians' opinions and the unequivocal law stating that the ALJ must weigh such opinions and provide good reasons for the weight given, the court is extremely hesitant to accept what is, at most, an implicit rejection of [the treating physician's] opinion"); *Mason v. Colvin*, No. 4:13-CV-93-D, 2014 WL 4162788, at *8 (E.D.N.C. 29 July 2014) ("[T]he court cannot overlook the 'importance of analyzing a treating physician's opinion.'" (quoting Ord. (D.E. 31), *Moreno v. Colvin*, No.

4:12–CV–143–D (6 Sept. 2013)), *rep. & recomm. adopted*, 2014 WL 4162818, at *1 (20 Aug. 2014)).

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 23) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 31) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence. That is a matter for the Commissioner to decide.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 7 March 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the**

Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Any response to objections shall be filed within 14 days after the filing of the objections.

This 21st day of February 2017.

James E. Gates
United States Magistrate Judge